IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TAMELA J. DEAL,                              )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )   Civil Action No. 10-352-GMS
                                             )
MICHAEL J. ASTRUE,[1]                        )
Commissioner of Social Security,             )
                                             )
            Defendant.                       )

**MEMORANDUM**

## I.   INTRODUCTION

      This action arises from the denial of the plaintiff Tamela Deal's ("Deal") claim for Social

Security benefits under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-

433, 1381-1383(f). Deal filed for disability insurance benefits ("DIB") on August 13, 2007, and

for supplemental security income ("SSI") on October 4, 2007, claiming she became disabled on

November 19, 2004. (D.I. 5 at 134-38.) The Social Security Administration ("SSA") denied

Deal's claims initially and on reconsideration. (*Id.* at 89, 95.) Deal thereafter requested an

administrative law judge ("ALJ") rehearing, which took place on December 9, 2008. (*Id.* at 100,

42.) At the hearing, testimony was provided by Deal (represented by counsel Gary Linarducci)

and an impartial vocational expert, Tony Melanson. (*Id.* at 27.)

_____

      [1] Carolyn W. Colvin became the Commissioner of Social Security ("Commissioner") on
February 13, 2013, after briefing began. Although under Federal Rule of Civil Procedure 25,
Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g)
no further proceedings are necessary to continue this action.

The ALJ, Melvin Benitz, issued a written decision on September 14, 2009, denying Deal's benefit claims. (*Id.* at 24, 27.) Deal requested a review of the ALJ's decision by the Social Security Appeals Council, which denied review on March 30, 2010. (*Id.* at 1, 132.) Deal filed a timely appeal with the court on April 27, 2010. (D.I. 1.) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 8, 10.) For the reasons that follow, the court will: (1) deny Deal's motion for summary judgment, and (2) grant the Commissioner's motion for summary judgment.

## II. BACKGROUND

Deal was born on March 3, 1964. (D.I. 5 at 134.) She has a high school diploma and attended college for one year. (*Id.* at 77). At the time of her application for DIB and SSI on August 13, 2007, and October 4, 2007, respectively, Deal was forty-three years old. (*Id.* at 134-38.) Her alleged disability dates back to November 19, 2004. (*Id.*)

### A. Medical and Employment History

Deal worked as a Delaware correctional officer for sixteen years until February 19, 2004, when her neck and back were injured in a fall. (*Id.* at 45, 49, 495.) After her accident, she continued to work in the Delaware Correctional Center ("DCC") as an operations support specialist. (*Id.* at 47.) A month later, she developed appendicitis, for which she underwent an appendectomy in October 2004. (*Id.* at 48.) After a brief period of recovery, she returned to her job at the DCC. (*Id.*) On November 1, Deal was notified that a biopsy of her appendix had revealed the presence of a carcinoid tumor. (*Id.*) Deal claims her disability began on November

2

19, and she underwent surgery to remove the tumor on December 1. (*Id.* at 134, 48.)[2] Deal attempted to return to work after the surgery, but was unable to do so successfully; the ALJ later agreed with Deal that this constituted an unsuccessful work attempt. (*Id.* at 29.)

Deal underwent surgery in October 2006 to treat the long-standing back and neck problems that began after her fall, including a diagnosis of disc herniation, facet arthropathy (arthritis), and reversal of the lordotic curve (an abnormal straightening of the cervical spine). (*Id.* at 54, 247, 404, 414, 496.) After surgery, Deal underwent several months of physical therapy. (*Id.* at 328-64.) She continued to report serious pain after several years of epidural injections intended to treat her lower back pain. (*Id.* at 366, 371, 395, 398, 413, 436, 437, 561, 562, 653.)

Throughout the time period for which Deal claims disability, she gained eighty pounds and was diagnosed with obesity, diabetes, and hyperthyroid disease. (*Id.* at 64, 441, 469, 637, 641-42.) Deal later lost between fifty-three and fifty-eight pounds, which Dr. Sean Nolan, M.D., attributed to significant life stressors. (*Id.* at 65, 441.) Deal testified that her weight loss "helped a lot" in reducing her pain, though she still considered her pain constant and substantial after the 2008 weight loss. (*Id.* at 67, 441.)

Deal returned to work part-time as a phone salesperson for T-Mobile from June to August 2008. (*Id.* at 57, 59.) She was not afforded the opportunity to sit at this job and left due to reported pain and trouble sleeping. (*Id.* at 58.) That August, Deal enrolled in classes at Delaware Technical Community College ("Del Tech"). (*Id.*) Deal testified that she attended classes two days a week for four to six hours on those days. (*Id.*) Deal is currently taking these classes in

---

[2] Deal does not claim disability on the basis of her cancer or appendicitis. (D.I. 9 at 3.)

3

hopes of obtaining employment that will allow her to sit or stand at her discretion. (*Id.* at 75.)

## B. Expert Opinions

### 1. Dr. Clements

Dr. Barton Clements, M.D., diagnosed Deal's appendicitis and performed her appendectomy on October 13, 2004. (*Id.* at 537-41, 621-625.) He noted on October 21 that her incision was healing well and opined that she could attempt to return to light duty work in four days. (*Id.* at 515.) On November 1, Deal was notified of the discovery of her carcinoid tumor, and she underwent surgery for its removal on December. (*Id.* at 48.) As of December 23, 2004, Dr. Clements noted in a follow-up to the colectomy that Deal "seem[ed] to be doing fantastic" and found her "markedly improved" since her previous visit. (*Id.* at 513.) He also noted her significant weight loss, to which he attributed her "feel[ing] better overall." (*Id.*) Despite the presence of some granulation tissue, hot flashes, and acne, Dr. Clements remarked on January 10, 2005, that Deal "seem[ed] to be doing fairly well." (*Id.*) However, on that same date Dr. Clements indicated in a disability pension form that Deal suffered from chronic back and abdominal pain and was not physically able to return to work. (*Id.* at 511-12.) Dr. Clements gave Deal a prognosis of "fair/good undetermined." (*Id.*)

ALJ Benitz in his decision afforded Dr. Clements's opinion "little weight." (*Id.* at 20.) He agreed with Dr. Clements that Deal could not perform her past duties as a corrections officer, but disagreed that she could not perform a lighter duty job with certain limitations. (*Id.*) As evidence for this conclusion he noted Deal's class attendance and home study time, the medical records from Dr. Witherell indicating that she was taking online computer courses as of February 2008,

and Deal's testimony that she did not lie down during the day, though she needed to change positions throughout the day. (*Id.*)

## 2. Dr. Schwartz

Dr. Eric T. Schwartz, M.D., treated Deal's neck and low back injury beginning March 17, 2004. (*Id.* at 478-84.) Throughout her following visits, Dr. Schwartz advised that Deal could continue to perform a limited range of light work with no repetitive bending, stooping, or squatting. (*Id.*) Dr. Schwartz determined by August 26 that Deal had reached maximum medical improvement and opined that she was unable to perform her regular duty as a correctional officer and should instead maintain a light duty work status, seeking additional vocational training if necessary. (*Id.* at 478.) He completed a form on November 1 recommending that Deal remain limited to this range of light work. (*Id.* at 484.) After two final visits in February and June of 2005, Dr. Schwartz completed a progress note on June 16 indicating Deal's continued back and neck pain. (*Id.* at 473.) In his decision, ALJ Benitz agreed with Dr. Schwartz's advisement that Deal be limited to a reduced range of light work. (*Id.* at 36) In light of that advisement and Deal's professed improvement following surgery, ALJ Benitz afforded Dr. Schwartz's opinion great weight. (*Id.*)

## 3. Dr. Sugarman

Dr. Michael G. Sugarman, M.D., first evaluated Deal on June 25, 2004, and discovered an apparently non-destructive cystic lesion on her thoracic spine, which prompted neurosurgical referral. (*Id.* at 416.) He noted that Deal had developed pain in her lower back radiating into her right leg and ankle following her accident, and remarked that her exam revealed an excellent range of motion. (*Id.*) Dr. Sugarman reviewed a lumbar MRI from which he found degenerative

5

changes but no disc herniation. (*Id.*) He diagnosed Deal with lumbar spondylosis with a back strain from her fall and recommended a conservative course of treatment, including a book of daily exercise regimes. (*Id.*)

On June 22, 2005, Deal returned to Dr. Sugarman because of reported back and neck pain. (*Id.* at 415.) Another MRI of her thoracic spine continued to show the cystic lesion unchanged in size. (*Id.*) Dr. Schwartz attributed Deal's pain not to the cystic lesion but to disc protrusions revealed by the MRI, and he recommended an additional MRI of her cervical spine and lumbar spine. (*Id.*) The MRI confirmed the protrusions and showed facet arthropathy throughout. (*Id.*) Dr. Schwartz discussed treatment options with Deal and deemed her decision to try epidural steroid blocks reasonable, but these did not improve her condition. (*Id.* at 413-415.) Deal reported getting excellent results from "DRX 9000" therapy for her back by January 18, 2006. (*Id.* at 411). Dr. Sugarman did not feel that surgical intervention was necessary at that time. (*Id.*)

On January 25, 2006, at the request of Deal's attorney, Dr. Sugarman prepared a report of his care and opined that any job working at a desk on a regular daily basis would exacerbate Deal's condition. (*Id.* at 578-580.) Because of Deal's cervical and lumbar spine condition, Dr. Sugarman did not believe she could perform her former job as an Operations Support Specialist on a regular forty-hour week work basis. (*Id.*) On an assessment for workers' compensation dated September 2, 2008, Dr. Sugarman opined that Deal was incapable of more than part-time sedentary work with major limitations on physical exertion. (*Id.* at 658.) He also noted that she had lost and was continuing to lose a great deal of weight, and that continuing to lose more would only be of benefit to her. (*Id.* at 655.)

6

In his decision, ALJ Benitz accorded Dr. Sugarman's opinion some weight. (*Id.* at 35.) He agreed with Dr. Sugarman that Deal could not perform her past work as a correctional officer but disagreed with Dr. Sugarman's assessment that Deal could work only four hours a day. (*Id.*) ALJ Benitz based this disagreement on Deal's testimony about her school attendance, the lack of medical evidence indicating Deal could not perform full-time work on a regular basis with certain limitations, and the records from Dr. Sugarman demonstrating improvement in Deal's conditions over time. (*Id.*)

### 4. Dr. Bandera

Dr. Peter Bandera, M.D., examined Deal and reviewed her medical records on December 19, 2007, for a workers' compensation assessment. (*Id.* at 421-22.) At this time Deal reported residual neck pain with a bilateral radiating component and low back pain with right greater than left radiation. (*Id.*) Dr. Bandera assessed her as having a decreased range of motion, muscle spasms, and muscle guarding. (*Id.*) He advised that Deal should defer impact forces to the cervical and lumbar spine in that, as ALJ Benitz interpreted, she should not perform work above the sedentary or reduced range of light levels of exertion. (*Id.* 422, 36.) For the purposes of the workers' compensation assessment, Dr. Bandera gave Deal a 34% permanent partial rating for the cervical spine and a 22% partial impairment rating for the lumbar spine. ALJ Benitz accorded weight to the portions of Dr. Bandera's opinion assessing Deal's physical capabilities and workplace recommendations, but disregarded Dr. Bandera's disability ratings on account of their use of a different standard than that applied for Social Security disability purposes. (*Id.* at 36.)

7

### 5. State Agency Consultants

Dr. Michael H. Borek, D.O., a state agency physician, reviewed the medical evidence of record on May 11, 2006, and opined that Deal could perform a limited range of sedentary work subject to numerous physical restrictions. (*Id.* at 592-99.) Dr. Judy Kleppel, M.D., a state agency consultant, reviewed the medical record and affirmed Dr. Borek's opinion on June 10. (*Id.* at 600-01.) Dr. Borek again examined Deal on March 6, 2008, when he again opined that Deal could perform a limited range of sedentary work subject to numerous physical restrictions. (*Id.* at 423-29.) Dr. Anne C. Aldridge, M.D., affirmed Dr. Borek's opinion on May 29. ALJ Benitz assigned some weight to the opinions of the State agency consultants. (*Id.* at 37.) He assigned similar environmental limitations to Dr. Borek, but on account of Deal's weight loss considered less relevant the portions of Dr. Borek's opinion which were based on Deal's obesity. (*Id.*)

### C. The ALJ's Decision

On September 14, 2009, ALJ Benitz issued a decision finding Deal not disabled during the claimed period from November 19, 2004, to the date of the decision. (*Id.* at 27, 39.) He found that Deal had the impairments of degenerative disc disease of the lumbar and cervical spine, diabetes mellitus, and obesity. (*Id.* at 29.) ALJ Benitz determined in his residual functional capacity ("RFC") assessment that, with these impairments, Deal could perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to certain exceptions based on the limitations recommended by her treating physicians. (*Id.* at 33.) While ALJ Benitz determined Deal was unable to perform any past relevant work, he found in accord with a vocational expert's testimony that Deal could perform a number of jobs which exist in significant numbers in the national economy. (*Id.* at 37-38.)

8

## III.   STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393. A fact is material only if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.*; *see also Assaf v. Fields*, 178 F.3d 170, 173-74 (3d Cir. 1999).

This standard does not change merely because there are cross-motions for summary judgment. *Appelmans v. Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

9

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). "The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party." *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

## B. Standard of Review

A reviewing court will only reverse the ALJ's decision if the Commissioner did not apply the proper legal standards or if the ALJ's decision is unsupported by "substantial evidence" in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992). "Where the ALJ's findings of fact are supported by substantial evidence," the court is "bound by those findings, even if ... [it] would have decided the factual issue differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). "[S]ubstantial evidence ... means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, substantial evidence "may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). "If there is only a slight preponderance of the evidence on one side or the other, the [Commissioner's] finding should be affirmed." *Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a *de novo* review of the ALJ's decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986). The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Richardson,* 402 F.2d at 401; *see*

*Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). ALJ decisions are therefore to be accorded a high level of deference in review. Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence. *Monsour*, 806 F.2d at 1190-91. In Social Security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to FED R. CIV. P. 56(c). *See Woody v. Sec'y. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV.   DISCUSSION

### A.  Applicable Statute and Law

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has promulgated regulations for determining disability by application of a five-step sequential analysis. *See* 20 C.F.R. § 404.1520. The ALJ, the reviewing Appeals Council, and the Commissioner evaluate each case according to this five-step process until a finding of "disabled" or "not disabled" is obtained. *See id.* at § 404.1520(a). The process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."
2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."
3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled." Otherwise, she will be found "not disabled."
4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

11

5.      Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not she is capable of performing other work in the national economy. If she is incapable, a finding of disability will be entered. Conversely, if the claimant can perform other work, she will be found "not disabled."

See *Cunningham v. Apfel,* No. 00-693, 2001 WL 1568708, at *4 (D. Del. Dec. 7, 2001) (paraphrasing the five-step process for determining disability).

The disability determination analysis involves a shifting burden of proof. *See Wallace v. Secretary of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his or her claim by a preponderance of the evidence. At step five, however, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment the claimant is able to perform. *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000); *see also Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker,* 703 F.2d 751, 753 (3d Cir. 1983). Substantial gainful employment is defined as "work that - (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. When determining whether substantial gainful employment is available, the ALJ is not limited to consideration of the claimant's prior work, but may also consider any other substantial gainful activity which exists in the national economy. *See* 42 U.S.C. § 423 (d)(1)(A), (2)(A); *Heckler v. Campbell,* 461 U.S. 458, 460 (1983).

**B.   The ALJ's Finding of "Not Disabled"**

Undertaking the five-step process, ALJ Benitz found at step one that Deal has not engaged in substantial gainful activity since the alleged onset date and at step two that Deal has several severe impairments. (D.I. 5 at 29.) However, ALJ Benitz found in step three that Deal's

Case 1:10-cv-00352-GMS Document 13 Filed 06/13/14 Page 13 of 23 PageID #: 86

impairments do not, either singularly or in combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 32.) While ALJ Benitz found in step four that Deal could not perform her past relevant work as a correctional officer, he found in step five that she has the RFC to perform the light work necessary for several forms of substantial gainful activity which exist in the national economy. (*Id.* at 37, 33.) ALJ Benitz therefore concluded that Deal has not, during the relevant dates of consideration, been under a disability as defined by the Act. (*Id.* at 39.)

### 1. Parties' Contentions

Deal disputes only ALJ Benitz's determination of RFC under step five, arguing that ALJ Benitz "failed to acknowledge the deference that [the treating source's medical] opinion was entitled to receive" in that he "rejected every single time-relevant physician opinion of record and formulated a[n] [RFC] finding with no legitimate medical support." (D.I. 9 at 2.) Deal maintains that "ALJ Benitz's legal error was his failure to give [Dr. Sugarman's] opinion any deference at all." (D.I. 12 at 3.)

Deal additionally claims that ALJ Benitz "over-stated [sic] Ms. Deal's school attendance in order to discount medical opinions which were favorable to her" and that "this fundamental misunderstanding of the testimony led ALJ Benitz to discount the credible medical opinions of record." (D.I. 9 at 13-14.) Deal also tangentially – and repeatedly – alleges that "this appears to be a pervasive problem in the Dover Hearing Office of [the] SSA," but she offers no support for this allegation and fails to indicate its relevance to the present case. (D.I. 9 at 10-11.)

In advancing these arguments, Deal overlooks the ALJ's clear understanding of Deal's school attendance in the record. (*See, e.g.,* D.I. 5 at 34 (acknowledging that "the claimant

13

admitted to being able to attend class regularly 2 days a week for 4-6 hours a day ....").) She also mischaracterizes ALJ Benitz's assessment of the medical opinions and mistakes the level of deference the ALJ is required to accord the opinion of treating sources. Deal in effect asks this court to undertake an inappropriate *de novo* review of the ALJ's findings on the record by re-weighing the evidence in Deal's favor. Because, as the Commissioner contends, ALJ Benitz's findings are supported by substantial evidence in the record – evidence which a reasonable mind might accept as adequate to support his conclusion – this court will not overrule those findings.

## 2. Weight Given to Treating Source's Medical Opinion

Deal asserts that the ALJ erred by failing to give controlling weight to Dr. Sugarman's opinion and by rejecting the opinions of Dr. Clements, Dr. Bandera, and "SSA's own state agency physician," by which Deal presumably refers to Dr. Borek, Dr. Aldridge, and Dr. Kleppel collectively. (D.I. 9 at 10.) Deal further contests ALJ Benitz's assignment of "great weight" to Dr. Schwartz's opinion because she contends the opinion was "outdated" due to the degenerative nature of Deal's conditions. (D.I. 9 at 11-12.)

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence on record. *Fargnoli*, 247 F.3d at 43. The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled. *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

14

It is error, however, to apply controlling weight to an opinion merely because it comes from a treating source if it is not well-supported by the medical evidence or is inconsistent with other substantial evidence – medical or lay – in the record. SSR 96-2P, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports," and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. A statement by a treating source that a claimant is "disabled" is not a medical opinion: rather, it is an opinion on an issue reserved to the ALJ because it is a legal finding that is dispositive of the case. *See* 20 C.F.R. § 416.927(d). Only the ALJ can make a disability determination.

If a medical source's opinion is not given controlling weight, it may still be given some weight based on these factors: (1) whether the source has examined the claimant; (2) whether the source has treated the patient, and the length, nature, and extent of the treating relationship; (3) the degree to which the source has presented relevant evidence to support the opinion; (4) the degree to which the source's opinion is consistent with the record as a whole; (5) whether the source specializes in the relevant medical area; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). If a treating source's opinion is not given controlling weight, the ALJ must explain in the decision his reasons for not doing so and the reasons for which he grants weight to other sources. 20 C.F.R. §§ 404.1527(c)(2), 404.1527 (e)(2)(i) (2012); *see also* SSR 96-2P at *5.

ALJ Benitz did not "reject" outright any of the physicians' opinions, as Deal contends (D.I. 9 at 11), but accorded each varying degrees of weight ranging from "some weight" to

"great weight" based on the level of their credibility and consistency with the evidence of record (*e.g.,* D.I. 5 at 37), as the Commissioner correctly states ( D.I. 11 at 13).

## a. *Dr. Sugarman's Opinion*

ALJ Benitz properly accorded Dr. Sugarman's opinion "some weight" and explained his reasons for not according it controlling weight (D.I. 5 at 35.) ALJ Benitz agreed with Dr. Sugarman "that the claimant could not perform her past work as a correctional officer as evidenced by the [RFC]." (*Id.*) Nevertheless, he disagreed with Dr. Sugarman's opinion "that the claimant could only work 4 hours a day." (*Id.*) The reason for the ALJ's disagreement was Deal's admitted level of functioning in daily activities and because of her class attendance two days a week for four to six hours a day, above the four hour working day limitation indicated by Dr. Sugarman. (*Id.*) ALJ Benitz also reasonably concluded that Deal's graphic design classes would require her "to study and perform school work at home," indicating her capacity to complete even more working time than the four to six hours spent in class. (*Id.*)

Deal misunderstands this reasonable conclusion of ALJ Benitz to mean that the ALJ was under the impression that Deal had reported attending classes "every day" instead of two days per week. (D.I. 9 at 13.) Based on this misunderstanding, Deal asserts that "ALJ Benitz has over-stated Ms. Deal's school attendance in order to discount medical opinions which were favorable to her." (*Id.*) The very section of the decision cited by Deal, however, indicates that ALJ Benitz fully understood from the record that Deal had reported attending classes two days a week for four to six hours on each of those days. (D.I. 5 at 34 ("In spite of her alleged limitations, the claimant admitted to being able to attend class regularly 2 days a week for 4-6 hours a day ....").) ALJ Benitz reasonably concluded from this that Deal was capable of working on *other* days as

well, as there is nothing in the record to indicate that there was some special circumstance which enabled Deal to attend class only on those two particular days of the week. This was not a "fundamental misunderstanding of the testimony" on the ALJ's part, as Deal claims. (D.I. 9 at 14). The only "fundamental misunderstanding," in fact, is Deal's misunderstanding of this clearly written portion of the ALJ's decision.

Deal further argues that ALJ Benitz erred in failing to state explicitly the legal standard by which weight is given to physician opinions, and that this "strongly suggests that he did not apply the proper legal standard in evaluating Dr. Sugarman's opinion." (D.I. 9 at 11.) The court disagrees. Deal cites no legal precedent that requires an ALJ to recite 20 C.F.R. § 416.927 verbatim when applying the law. It is required only that "administrative law judge must explain in the decision the weight given," which ALJ Benitz did explicitly in each instance. 20 C.F.R. § 416.927(e)(ii). Deal's additional inference – that ALJ Benitz's failure to explicitly state the standard implies that he improperly applied the standard – constitutes a logical non sequitur and merits no further comment.

## b. *Dr. Clements's Opinion*

Deal also accuses ALJ Benitz of having "rejected" Dr. Clements's opinion. (D.I. 9 at 11.) In actuality, ALJ Benitz considered Dr. Clements's opinion and accorded it "little weight." (D.I. 5 at 36.) ALJ Benitz agreed with Dr. Clements that Deal "could not have performed her past relevant work as a corrections officer" but disagreed that there was any reason "why she could not perform a lighter job duty in accordance with the limitations in the [RFC]." (*Id.*) ALJ Benitz again pointed to the fact that Deal "is attending three classes two days a week for a total of 4-6

17

hours a day plus study time at home" as contradictory evidence to the latter, and reasonably gave little weight to Dr. Clements's opinion accordingly. (*Id.*)

It is perhaps strange that ALJ Benitz would consider Deal's "taking on-line computer courses" to be indicative of her ability to work, given that Dr. Clements noted that "[h]er pain is aggravated" by that computer work. (*Id.* at 36, 432.) ALJ Benitz could, however, reasonably have concluded that the neck pain aggravation – which Deal rated "at a 5 on a 0-10 scale" – was evidently insufficient to prevent her from working, particularly since she continued to take the online computer courses despite the pain. (*Id.* at 432.)

## c.   *Dr. Bandera's Opinion*

Deal argues that ALJ Benitz rejected Dr. Bandera's opinion. (D.I. 9 at 11.) To the contrary, ALJ Benitz considered Dr. Bandera's opinion and assigned it weight "to the extent that it is relevant to this decision." (D.I. 5 at 36.) ALJ Benitz agreed with Dr. Bandera's recommendation that Deal "should not perform work above the sedentary or reduced range of light levels of exertion," as reflected in ALJ Benitz's RFC assessment. (D.I. 5 at 36.) ALJ Benitz declined to consider Dr. Bandera's opinion as to Deal's permanent partial impairment ratings because those ratings, while salient to workers' compensation claims, pertain to a different set of standards for disability than those under the Act. (*Id.*); 20 C.F.R. §§ 404.1504, 416.904 ("a determination made by another agency that you are disabled or blind is not binding on [the SSA]").

The Commissioner cites *Coria v. Heckler* for the proposition "that a state workers' compensation determination of disability is not binding on [the] SSA." (D.I. 11 at 18.) The *Coria* court held that:

18

> Although a worker's compensation hearing, unlike a Social
> Security disability hearing, may be adversarial in nature, *this
> should not affect the reliability of the objective medical findings of
> the examining physician*. There seems to be no valid reason why a
> claimant ... should be required to undergo a second series of
> medical examinations that duplicate the series made for the
> worker's compensation claim. Instead, the ALJ should evaluate the
> objective medical findings set forth in the medical reports for
> submission with the worker's compensation claim by the same
> standards that s/he uses to evaluate medical findings in reports
> made in the first instance for the Social Security claim, unless there
> is some reasonable basis to believe a particular report or finding is
> not entitled to comparable weight.

*Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984) (emphasis added); *see also Griffin v. Comm'r Soc. Sec.*, 2009 WL 7881, at \*892 (3d Cir. Jan. 2, 2009) (reaffirming that other agencies' determinations are not binding on the SSA).

However, while the ALJ in *Coria* "explicitly disregarded a substantial portion of the medical evidence" and therefore "failed to consider 'all the evidence' as is required," ALJ Benitz did not disregard Dr. Bandera's opinion. *Id.* at 248. ALJ Benitz gave weight to Dr. Bandera's opinion and incorporated it into his RFC assessment, agreeing "that the claimant should defer impact forces to the cervical and lumbar spine in that she should not perform work above the sedentary or reduced range of light levels of exertion." (D.I. 5 at 36.) The only portion of Dr. Bandera's opinion ALJ Benitz can be said to have "rejected" is the assignment of permanent partial impairment ratings. The ALJ's conclusion was reasonable given the conflicting evidence already noted and that determinations made for workers' compensation purposes are not binding on an ALJ's disability determination. *Griffin*, 2009 WL 7881, at \*892.

### d. *State Agency Physicians' Opinion*

ALJ Benitz assigned only some weight to the opinion of the state agency physicians, who indicated that Deal would be confined to sedentary work with a number of limitations. (D.I. 5 at 36.) Dr. Borek's assignment of those restrictions was based in large part on Deal's obesity. (*Id.* at 37.) Thus, ALJ Benitz reasonably concluded that Deal's subsequent and significant weight loss undermined their necessity. (*Id.*) He also reasonably concluded that Deal "would be able to perform light lifting and carrying with a sit/stand option." (*Id.*) ALJ Benitz retained Dr. Borek's environmental limitations and restrictions on climbing, stooping, or balancing, as well as Dr. Borek's limitations on jobs requiring repetitive neck turning or skilled, high-stress labor. (*Id.*) He did so because these limitations and restrictions were "supported by the claimant's complaints of pain and by the findings on examination ...." (*Id.*) ALJ Benitz fully explained his specific reasons for assigning "some weight" to the state agency physicians' opinion. (*Id.*)

### e. *Dr. Schwartz's Opinion*

Deal argues that ALJ Benitz erred in according the most weight ("great weight") to Dr. Schwartz's opinion because that opinion, dated two weeks prior to the claimed date of onset, "did not even pertain to the relevant time period," and because Deal's degenerative conditions could not have improved with time. (D.I. 9 at 11; D.I. 5 at 36). Deal cites *Doak v. Heckler* for the proposition that for an ALJ to accord weight to a medical opinion outside "the relevant time period" is an error of law. (D.I. 9 at 12.) Deal's citation to *Doak* is inapposite. In *Doak* the Third Circuit found that the ALJ had unreasonably based his conclusion on the testimony of a vocational expert against all medical testimony on the record. *Doak v. Heckler*, 790 F.2d 26, 30

(3d Cir. 1986). ALJ Benitz reasonably concluded from Dr. Schwartz's opinion that Deal was capable of "light work with no repetitive bending, stooping, and squatting."[3] (D.I. 5 at 36.)

Deal makes much of the fact that Dr. Schwartz's November 2004 assessment occurred prior to her surgery, and she argues it should therefore be construed as irrelevant. (D.I. 9 at 11-12.) However, there is no evidence in the record that Deal's surgery worsened her condition beyond the initial recovery period. ALJ Benitz notes that "there is nothing to suggest that she would not have been capable of performing a reduced range of light work after she improved from her surgery," and Deal offers no response to this reasonable inference. (D.I. 5 at 36.) In fact, Deal "admitted to improvement in the use of her right arm following surgery," and offered no testimony to suggest that the surgery had anything but a positive long-term effect on her medical outlook and physical capabilities. (*Id.*) Deal goes on to argue that the "degenerative" nature of her condition should "undercut ALJ Benitz's conclusion that [her] condition improved with time," but offers no reason why this court should accept that general, uncited proposition in spite of the actual evidence on record. (D.I. 9 at 11-12.) This argument ignores Deal's own admission of her improvement post-surgery and later note by Dr. Schwartz that Deal felt "that her neck and back are better." (D.I. 5 at 476.)

ALJ Benitz, therefore, acted reasonably in according Dr. Schwartz's opinion great weight. ALJ Benitz committed no error of law in this assessment or any other. With due consideration given to the parties' arguments and submissions, and the applicable law, the court finds that ALJ Benitz's disability determination was properly supported by substantial evidence.

---

[3] Furthermore, the Commissioner correctly notes that Dr. Schwartz's assessment was "the most contemporaneous to [Deal's] back injury." (D.I. 11 at 19.)

21

## V.    CONCLUSION

ALJ Benitz's findings were supported by evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 F.2d at 401. Thus, the court grants the Commissioner's motion for summary judgment and denies Deal's motion for summary judgment.

Dated: June 12, 2014

CHIEF, UNITED STATES DISTRICT JUDGE

22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TAMELA J. DEAL,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )  Civil Action No. 10-352-GMS
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )
                                         )

**ORDER**

At Wilmington, this *12th* day of June, 2014,

IT IS HEREBY ORDERED THAT:

1.  The plaintiff's motion for summary judgment (D.I. 8) is DENIED;

2.  The defendant's motion for summary judgment (D.I. 10) is GRANTED; and

3.  The decision of the ALJ is affirmed.

CHIEF, UNITED STATES DISTRICT JUDGE